IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PSN ILLINOIS, LLC, )
 )
      Plaintiff, )
 )
  v. ) No. 09 C 5879
 )
ABBOTT LABORATORIES, et al., )
 )
      Defendants. )

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' motions in limine. For the reasons stated below, the motions are granted in part and denied in part.

# BACKGROUND

Plaintiff PSN Illinois, LLC (PSN) alleges that Defendant Abbott Laboratories and Defendant Abbott Bioresearch Center, Inc. (collectively referred to as "Abbott") are infringing three U.S. Patents assigned to PSN: U.S. Patent No. 5,585,476, U.S. Patent No. 5,856,443, and U.S. Patent No. 6,518,414. Specifically, PSN alleges that Abbott infringes, directly and/or indirectly on PSN's patents relating to certain

1

protein receptors. A receptor is a way to communicate with a cell in the body of a living organism. Receptors are used in drug development to determine the effects of a drug on the human body because of their ability to communicate with drug compounds. The patents at issue in this case relate to the S1P2 protein receptor. PSN alleges that Abbott infringes PSN's patents through its use of S1P2 receptors in developing Abbott drug candidates ABT-924, ABT-413 and ABT-459, and in reducing to practice inventions recited in at least three of Abbott's published U.S. Patent applications. PSN includes in its complaint claims alleging that Abbott is infringing three of PSN's patents directly and indirectly, and that the infringement is willful. Abbot has filed counterclaims, contending that PSN's patents are invalid and seeking a declaratory judgment stating that Abbott does not infringe PSN's patents.

On January 28, 2011, a Joint Stipulation on Claim Construction was entered. Subsequently, on February 23, 2011, Abbott filed a motion for summary judgment asserting that its alleged infringing activities were protected by the Safe Harbor provision of 35 U.S.C. § 271(e)(1), that PSN's settlement and license agreements with third parties exhausted their rights in the patents at issue, and that PSN failed to comply with the notice requirements of 35 U.S.C. § 287(a). The prior judge in this case held: (1) that Abbott's alleged infringing activities did not fall within the Safe

Harbor provision of 35 U.S.C. § 271(e)(1); (2) that PSN's patent rights in the S1P technology that Abbott purchased from DiscoveRx and GenScript had been exhausted, and, with respect to any use prior to April 29, 2010, PSN's patent rights that Abbott purchased from Applied BioSystems and Invitrogen had been exhausted; (3) that the exhaustion doctrine did not pertain to Abbott's cloning or expressing S1P2 receptors; and (4) that PSN's failure to comply with the marking statute precluded recovery of damages for infringing activities that occurred during the period of February 14, 2008 to September 22, 2009. On March 30, 2012, this case was reassigned to the undersigned judge and the parties subsequently filed the instant motions in limine.

## DISCUSSION

I.  PSN's Motions in Limine

PSN moves: (1) to bar Abbott from raising certain affirmative defenses at trial, (2) to preclude Abbott from mentioning at trial that it has abandoned its S1P drug program, (3) to preclude Abbott from discussing its licensing practices at trial, (4) to bar opinions of Abbott's damages expert, Dr. Mohan Rao (Rao), relating to non-infringing alternatives, and (5) to exclude certain prior art references.

A. PSN Motion In Limine Number 1

PSN argues in PSN Motion In Limine Number 1 that two of Abbott's non-infringement affirmative defenses should be stricken due to unfair prejudice to PSN. PSN contends that Rao indicates in his expert report that Abbott could have avoided infringement of PSN's pertinent U.S. Patents by using PSN's S1P technology overseas or by using an alternative smooth muscle cell technology. PSN argues that the two defenses should be stricken, contending that Abbott's representative, presented in discovery pursuant to Federal Rule of Civil Procedure 30(b)(6), refused to testify about the two defenses during discovery, and that Abbott failed to identify the two defenses in a timely manner. (PSN Mot. 1, 1). A review of the record shows that Rao discussed the non-infringing alternatives as part of his analysis of what would be reasonable royalty damages. The alternatives were not discussed by Rao to support affirmative defenses, and Abbott does not indicate it intends to pursue such defenses at trial. In addition, Abbott admits in its response that it "has not claimed (nor could it)" that the possible use of S1P technology overseas or the possible use of smooth muscle cells are defenses to liability. (Ans. PSN Mot. 1, 5). Finally, PSN has not shown that it has been prejudiced by Abbott's late disclosure of its non-infringing alternatives. Rao's report was disclosed before the close of expert

4

discovery and PSN had an opportunity to depose Rao and to develop its own rebuttal case. Therefore, PSN Motion In Limine Number 1 is denied.

B. PSN Motion In Limine Number 2

PSN argues in PSN Motion In Limine Number 2 that Abbott should be barred from mentioning at trial that it has abandoned its S1P drug program because, according to PSN, such evidence would be irrelevant and unduly prejudicial to PSN. In this case PSN is seeking to recover damages for what would have been a reasonable royalty paid by Abbott to use PSN's S1P technology. The Federal Circuit has recognized that post-infringement evidence can be relevant for the purposes of calculating what would have been a reasonable royalty. *See, e.g. Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009)(stating that the Court's "case law affirms the availability of post-infringement evidence as probative in certain circumstances"). Evidence that can generally be considered for a reasonable royalty analysis includes: post-infringement sales forecasts, actual profit margins, and use of an allegedly infringing device by infringers. *See, e.g., id.* at 1333 (stating that "neither precedent nor economic logic requires [the Court] to ignore information about how often a patented invention has been used by infringers"). PSN argues if the jury learns that Abbott abandoned its drug program,

5

it could mislead the jury as to the value of the patents. PSN argues that although Abbott has now shut down its S1P program, nothing would prevent Abbott from restarting the program at any time. However, PSN will be able to make such an argument to the jury at trial. PSN has not shown that evidence relating to Abbott's abandonment of its S1P drug program would be unduly prejudicial. In addition, such evidence could, in part, be relevant to assessing what would have been a reasonable royalty. The amount of weight given to the evidence will be for the jury to decide. Therefore, PSN Motion In Limine Number 2 is denied.

C. PSN Motion In Limine Number 3

PSN argues in PSN Motion In Limine Number 3 that Abbott should be barred from arguing at trial that it does not enter into research tool licenses, and barred from challenging at trial PSN's valuation of PSN's patents by reference to Abbott licenses not produced by Abbott in this case prior to January 20, 2011, or by reference to Abbott licensing experience. PSN contends that such a prohibition is consistent with a joint stipulation entered in this case. Abbott indicates that it does not intend to make such arguments at trial. Therefore, PSN Motion In Limine Number 3 is denied as moot.

D.  PSN Motion In Limine Number 4

PSN argues in PSN Motion In Limine Number 4 that Abbott should be barred from presenting Rao's opinions regarding Abbott's non-infringing alternatives due to the evidence relied upon by Rao to arrive at such opinions.  PSN argues with regard to the smooth muscle cell line non-infringing alternative that Rao based his opinion exclusively on his interviews with Abbott doctors, Dr. Robert Stoffel (Stoffel) and Dr. Timothy Hla (Hla).  PSN contends that Stoffel is a biased source because he is allegedly the main perpetrator of the alleged infringing activities.  PSN also contends that Rao's opinion is unreliable because he has no expertise in the area of Abbott's overseas resources in 2005.  The admissibility of expert testimony is governed by Federal Rule of Evidence 702 (Rule 702) and the framework laid out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006).  Pursuant to Rule 702 and *Daubert*, a court evaluating a proposed expert must consider factors such as: (1) "whether the witness is qualified," (2) "whether the expert's methodology is scientifically reliable," and (3) "whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Central R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010); *see also Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)(indicating that a court should consider "(1) whether the theory has been or is

capable of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011)(explaining that in *Daubert* "the Supreme Court assigned to the district courts the responsibility of ensuring that all expert testimony pertains to 'scientific, technical, or other specialized knowledge'" under Rule 702, and that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful")(quoting Fed. R. Evid. 702); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008)(stating that "[u]nder *Daubert* . . . and Rule 702, courts are charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant"). A district court has "wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable. . . ." *Bielskis*, 663 F.3d at 894.

In the instant action, Abbott has shown that Rao is a qualified expert on the damages issues he addresses in the instant action. Rao has the requisite education, background, and experience to opine on the issue of damages in the area of pharmaceutical patent infringement. (Rao Ex. Rep. 4). It is also clear that Rao's testimony regarding non-infringing alternatives would assist the trier of fact in

understanding or in determining a reasonable royalty. PSN has not shown that Rao's opinions are too speculative nor that the underlying bases for his opinions are faulty. *See Oracle America, Inc. v. Google Inc.*, 2011 WL 5914033, at *1-*2 (N.D. Cal. 2011)(indicating that a damages expert may rely on the testimony of others relating to non-infringing alternatives so long as the expert can testify to the foundational facts at trial). PSN will be able to cross-examine Rao at trial if he testifies, and PSN will be able to present evidence by its own experts to rebut the opinions of Rao. To the extent that PSN believes that Rao relied upon biased sources, PSN can present such arguments to the jury at trial. It will be up to the jury to assess what weight, if any, should be given to the opinions of Rao. *See, e.g., U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 741 (N.D. Ill. 2009)(stating that "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact")(internal quotations omitted)(quoting *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000)); *Oracle*, 2011 WL 5914033, at *2 (stating that if the plaintiff was "worried about bias, then it should make its arguments on cross-examination"). Therefore, PSN Motion in Limine Number 4 is denied.

E. PSN Motion In Limine Number 5

PSN argues in PSN Motion In Limine Number 5 that Abbott's Notice of Prior Art under 35 U.S.C. § 282 served on October 11, 2012, should be excluded at trial because it is in violation of Local Patent Rule 3.4. PSN alleges that the cited prior art references will be used by Abbott to support its invalidity defenses at trial. However, Abbott contends that the references are unrelated to invalidity contentions. Rather, the references will be used for the limited purpose of showing the "state of the art" as required by 35 U.S.C. § 282(c). (A Resp. 2). In addition, the record reflects that Hla disclosed such prior art references through his expert report. Abbott's late disclosure of these references is not unfairly prejudicial to PSN given their limited purpose at trial. Therefore, PSN Motion in Limine Number 5 is denied.

II. Abbott's Motions In Limine

Abbott moves: (1) to preclude damages opinions and related evidence and argument, (2) to preclude evidence and argument concerning materials and uses covered by the court's order granting summary judgment, (3) to preclude expert testimony of inventor A. John MacLennan (MacLennan) and to distinguish his expert opinion from fact testimony, (4) to preclude evidence and argument regarding willful infringement, (5) to preclude Dr. Matthew J. Raymond (Raymond) from testifying

about drug discovery and development and U.S. Food and Drug Administration's (FDA) procedures, (6) to preclude evidence and argument that Hla's work infringes PSN's patents, (7) to preclude evidence and argument of allegedly missing testing data, (8) to preclude reference to Abbott's other litigations, and (9) to preclude evidence and argument concerning the relative sizes of the parties or their respective law firms.

A. Abbott Motion In Limine Number 1

Abbott argues in Abbott Motion In Limine Number 1 that PSN should be barred from introducing the opinions of PSN's expert David Haas (Haas). Abbott contends that Haas' damages approach is flawed, asserting that Haas' analysis includes allegedly infringing activities that occurred during time periods that were excluded by this Court's summary judgment rulings and that Haas fails to disaggregate damages in his analysis. Expert testimony on damages must be sufficiently tied to the facts of the case. *See Uniloc*, 632 F.3d at 1315 (stating that "if the patentee fails to tie the theory to the facts of the case, the testimony must be excluded").

Since Haas' opinion when taken as a whole is based upon the excluded time period, it is fundamentally flawed. In addition, the jury will likely be misled and

confused when presented with evidence concerning a time period for which PSN cannot recover damages, and such evidence would be prejudicial to Abbott. Therefore, Abbott Motion in Limine Number 1 is granted.

### B.  Abbott Motion In Limine Number 2

Abbott argues in Abbott Motion In Limine Number 2 that this court should preclude evidence or argument relating to the materials and uses covered by the court's summary judgment ruling and because it would unfairly prejudice Abbott and likely confuse a jury.  Specifically, Abbott contends that evidence relating to Abbott's use of S1P2 technology acquired from PSN's licensees and Abbott's use of the S1P2 technology during the excluded damages period from February 14, 2008 to September 22, 2009 should be precluded at trial.  Additionally, Abbott seeks to preclude certain PSN trial exhibits relating to uses that are allegedly barred by patent exhaustion or alleged uses during the excluded damages period.  PSN is barred from presenting evidence as to Abbott's use of S1P2 technology acquired from PSN's licensees and Abbott's use of the S1P2 technology during the excluded damages period from February 14, 2008 to September 22, 2009.  In addition, PSN has not shown that the probative value of this evidence is outweighed by its prejudicial effect.  Therefore, Abbott Motion in Limine Number 2 is granted.

C.  Abbott Motion In Limine Number 3

Abbott argues in Abbott Motion In Limine Number 3 that this court should preclude MacLennan from testifying at trial about certain areas outside of his expertise.  Abbott argues that MacLennan does not have the requisite qualifications to opine on issues relating to (1) drug discovery and development, (2) FDA approval process and requirements, (3) valuation of intellectual property, and (4) interpretation of Abbott's actions and motivations.  PSN has shown that MacLennan's testimony will be narrower than identified by Abbott in its motion.  In addition, PSN has shown that MacLennan possesses adequate qualifications relating to each of those issues.  To the extent that Abbott seeks to challenge MacLennan's opinions based upon his lack of experience and expertise, Abbott will be able to do so at trial through cross-examination.  It will be up to the jury to assess what weight to give to MacLennan's opinions.

Abbott also argues that because PSN seeks to have MacLennan provide fact testimony as well as expert testimony, his opinions should be distinguished to avoid confusion to a jury and unfair prejudice to Abbott.  MacLennan will be able to testify as an expert witness, and to the extent that he discusses other matters regarding the patents at issue, such testimony would generally be expert testimony as well since, as

the inventor, he would be relying upon specialized knowledge. Abbott has not specifically identified any issue that MacLennan would address that would constitute lay person testimony. However, the court notes that in the final instructions to the jury, the court instructs the jury: that they have heard expert witnesses give opinions about matters requiring special knowledge or skill, that they should judge this testimony in the same way that you judge the testimony of any other witness, that the fact that such person has given an opinion does not mean that they are required to accept it, that they are to give the testimony whatever weight they think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case. Therefore, Abbott Motion in Limine Number 3 is denied.

### D. Abbott Motion In Limine Number 4

Abbott argues in Abbott Motion In Limine Number 4 that this court should preclude PSN from arguing at trial that Abbott willfully infringed PSN's patents because, according to Abbott, the allegations are unsupported and are unduly prejudicial to Abbott. To prove willful infringement, a patentee must show by clear and convincing evidence (1) "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and (2) "that

this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). The court initially notes that if Abbott believed there was insufficient evidence to go to trial on the willfulness issue, Abbott should have included such an argument in a motion for summary judgment at an earlier juncture in this case. Regardless, PSN has pointed to sufficient evidence that it intends to introduce at trial on the issue of willfulness such that the issue should proceed to the jury. For example, PSN contends it will produce evidence showing that Abbott failed to obtain an opinion-of-counsel at any point, and that Abbott did or should have had pertinent knowledge based on Abbott's alleged interaction with S1P2 suppliers who entered into license agreements and consent decrees with PSN relating to the patents at issue. Abbott has not shown that PSN should be barred from presenting the willfulness issue to the jury. It will be up to the jury to determine whether there is sufficient evidence to show willfulness on the part of Abbott. Therefore, Abbott Motion in Limine Number 4 is denied.

E.  Abbott Motion In Limine Number 5

Abbott argues in Abbott Motion In Limine Number 5 that this court should preclude Raymond from testifying about the drug discovery and development

15

process, as well as FDA requirements and procedures for approving new drugs. Abbott contends that Raymond does not posses sufficient expertise to comment on such issues. PSN has shown that Raymond's qualifications are sufficient to allow him to testify as an expert on such issues. Abbott will be able to cross-examine Raymond at trial. It will be up to the jury to assess the weight to be given to Raymond's opinions on that issue. Therefore, Abbott Motion in Limine Number 5 is denied.

F. Abbott Motion In Limine Number 6

Abbott argues in Abbott Motion In Limine Number 6 that PSN should be precluded from presenting evidence and argument at trial relating to Hla's allegedly infringing work with the S1P2 receptor, contending that such evidence would be irrelevant and highly prejudicial to Abbott. Abbott contends that Hla's conduct is irrelevant to the issue of Abbott's alleged infringing conduct because Hla was not an employee of Abbott and was merely retained as an expert in this litigation. However, PSN contends that Hla engaged in separate conduct that infringed PSN's patents, and thus, to the extent that Hla asserts that Abbott did not engage in infringing activities, Hla may be, in part, defending his own actions. In addition, if Abbott's conduct is found to constitute infringing conduct, it may impede Hla's

ability to license his own patents. Thus, the evidence relating to Hla would be relevant on the issue of witness bias. To the extent that there might be any confusion as to whether Hla worked for Abbott, Abbott can clarify such matters when cross-examining Hla at trial. Therefore, Abbott Motion in Limine Number 6 is denied.

G. Abbott Motion In Limine Number 7

Abbott argues in Abbott Motion In Limine Number 7 that PSN should be precluded from offering evidence and argument that certain S1P2 test data is missing because it would be unfairly prejudicial to Abbott. PSN alleges that S1P2 test data is missing from a March 26, 2010 preclinical report produced by Abbott which contained results from various S1P receptor testing. Abbott contends that it did not perform any infringing S1P2 testing and that the only underlying data in the report relates only to S1P1, S1P3, S1P4, and S1P5 receptors, as the report suggests. The court notes that the prior judge in this case denied PSN's motion to compel the production of underlying test data from the March 26, 2010 report, finding that data relating to other S1P receptors in the report was not relevant to Abbott's alleged infringement of S1P2 receptors not contained in the report. (Dkt. 123). PSN contends that the 2010 report is missing data related to S1P2 receptor testing. However, PSN offers no evidence to support its conclusory assertion. In addition,

the record indicates that the prior judge, in denying the motion to compel, recognized that the underlying data in the 2010 report did not relate to S1P2 testing. Therefore, Abbott's Motion in Limine No. 7 is granted.

### H. Abbott Motion In Limine Number 8

Abbott argues in Abbott Motion In Limine Number 8 that PSN should be precluded from referencing any other litigation that Abbott is, or has been, involved in, including any criminal action, administrative investigation, and product liability case or settlement. PSN argues that it would be premature to bar PSN in advance from referencing other litigation, and that if Abbott argues that it is a good company that always engages in ethical practices, other litigation might become relevant. Abbott does not indicate that it intends to make such arguments at trial. Therefore, Abbott Motion in Limine Number 8 is granted. However, if at trial Abbott opens the door on this issue, the court will revisit its ruling.

### I. Abbott Motion In Limine Number 9

Abbott argues in Abbott Motion In Limine Number 9 that PSN should be precluded from introducing evidence or presenting argument relating to the relative sizes of Abbott and PSN, or their respective law firms. PSN has not provided any

justification for the introduction of such evidence or argument in this case. Therefore, Abbott Motion in Limine Number 9 is granted.

## CONCLUSION

Based on the foregoing analysis, all PSN Motions In Limine are denied. Abbott Motions in Limine 3, 4, 5, 6 are denied. Abbott Motion in Limine 1, 2, 7, 8, 9 is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 31, 2012